**HALSTEAD HOSPITAL, INC.,**
Plaintiff/Appellant/Cross-Appellee,

v.

**NORTHERN BANK NOTE COMPANY,**
Defendant/Appellee/Cross-Appellant.

**Nos. 80–1652, 80–1678.**

United States Court of Appeals,
Tenth Circuit.

June 21, 1982.

Robert L. Howard, Wichita, Kan. (Jerry G. Elliott and M. Kay Royse, Wichita, Kan., with him on the brief) of Foulston, Siefkin,

Powers & Eberhardt, Wichita, Kan., for plaintiff/appellant/cross-appellee.

George E. Bullwinkel of Boodell, Sears, Sugrue, Giambalvo & Crowley, Chicago, Ill. (Richard W. Daily and Donald E. Phillipson of Davis, Graham & Stubbs, Denver, Colo., with him on the brief), for defendant/appellee/cross-appellant.

Before SETH, Chief Judge, BREITEN-STEIN, Circuit Judge, and KUNZIG, Judge [*].

SETH, Chief Judge.

Halstead Hospital, Inc. commenced a diversity suit alleging breach of contract by the failure of Northern Bank Note Company to deliver printed bond forms in time for a bond closing in New York City. Trial was to the district judge and Halstead obtained a judgment. The trial court, however, sustained defendant's post-judgment motion and dismissed the action for lack of *in personam* jurisdiction over the defendant. Both parties have appealed.

Halstead is a nonprofit corporation with its principal place of business in Halstead, Kansas. Northern is an Illinois corporation with a nationwide business of printing bonds and other securities. Northern's principal place of business is located near Chicago. Halstead planned new Hospital facilities to be financed by industrial revenue bonds. A New York City law firm was retained to serve as bond counsel and agent in the bond offering. Halstead's bond counsel on behalf of the Hospital placed an order with Northern by telephone for the printing of bonds. A subsequent letter from bond counsel to Northern confirmed the order and stated that the bond closing was scheduled for December 18, 1975. Northern in turn accepted the order, and by letter stated, "[W]e will complete our work for shipment December 16." The parties agreed that the bonds were to be at the Signature Company in New York on December 17 so that they could be inspected and signed prior to the formal closing on December 18.

Northern printed the bonds and boxed them in four separate cartons. Northern arranged for a common carrier or courier to pick up the four cartons on the afternoon of December 16 and deliver them to New York the next morning. However, one of the boxes of bonds did not arrive in New York until after December 18, 1975. This delay necessitated cancellation of the December 18 closing.

■ The jurisdictional issue is concerned with compliance with the Kansas long-arm statute (K.S.A. § 60–308) and with basic due process considerations. It is clear that the Kansas statute was intended to obtain jurisdiction to the outer limits of due process. *Woodring v. Hall*, 200 Kan. 597, 438 P.2d 135. The dispute centers on K.S.A. § 60–308(b)(5) which seeks to extend jurisdiction to causes of action arising from

"[e]ntering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state."

The evidence in this case supports the application of the "contracts" provision of the long-arm statute quoted above. Significantly, the statute requires only that the contract "be performed in whole or in part by either party" in Kansas. As to performance obligations under the contract, it is clear that Northern expected the contract to be partially performed in Kansas to the extent that payment from Halstead in Kansas was anticipated by the parties (and so made). Additionally, Northern telephoned Halstead to obtain the signatures and seals necessary for the completion of the bond printing, which were then prepared in Kansas and sent to Illinois. Without the signatures and seals obtained from Halstead in

* Honorable Robert L. Kunzig, Judge of the United States Court of Claims, sat by designation.

He died after this appeal was heard and considered, but before this opinion was filed.

Kansas, Northern would have been unable to perform its contractual obligation to print the bond forms. Northern's conduct does fall within the scope of the "contracts" provision of the Kansas long-arm statute.

The trial court sustained defendant's motion to dismiss on due process grounds. The court considered only contacts with or within the state of Kansas relating to the contract. Thus the trial court said:

> "The only contacts defendant had with the State of Kansas, in connection with the Halstead Hospital contract, were the sending of invoices into Kansas, the making of a single telephone call to plaintiff in this state, and the receipt of the signatures and seals from the City of Halstead."

Halstead has asserted on appeal that this was an unduly restrictive view of "minimum contacts," and that the trial court erred in limiting its analysis of contacts to those "in connection with the Halstead Hospital contract." Instead it asserts that the totality of Northern's contacts in the state to include other matters and other customers should be examined.

■ The contract portion of the Kansas long-arm statute (K.S.A. § 60–308(b)(5)) is a typical single act or single transaction provision. This, however, should not and cannot separate it from the due process doctrines developed in the doing business cases. The "minimum contact" element, the "traditional notions of fair play and substantial justice," "purposefully avails itself" of the privilege of acting in the forum state, and the "reasonably foreseeable consequences" in the forum state must all be examined. In so doing it is reasonable and proper to consider the context in which the single transaction took place. We considered this portion of the Kansas statute in *Pedi Bares, Inc. v. P. & C Food Markets, Inc.*, 567 F.2d 933 (10th Cir.), and applied the usual doctrines referred to above.

■ When all the activities of Northern in the state of Kansas are considered there develops a pattern which demonstrates that Northern maintained continuing promotion and sales efforts in Kansas. It distributed its advertising brochures in the state, which read in part, "Our marketing area covers all fifty states, plus Guam and Puerto Rico." A Northern representative visited Kansas in March of 1975, and attempted to meet with attorneys from a Wichita law firm engaged in municipal bond work. The Company Vice President, Mr. William D. Warner, admitted in his deposition that Northern sent direct mailings into the state and solicited business in Kansas. The record shows that Northern performed 26 printing contracts for issuers of bonds in Kansas from January 1971 through December 1975. Northern printed bonds for several Kansas cities and governmental entities, including the Wichita School District, the Kansas Turnpike Authority, and Parsons, Liberal, and Kansas City, Kansas. Northern submitted bids for Kansas work and shipped bonds to Kansas. The described activities were closely related to and part of the promotion leading to Northern's individual dealings with Halstead in this case. This establishes sufficient "minimum contacts" so as to permit the exercise of *in personam* jurisdiction over Northern. They were not unilateral acts of plaintiff under *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, nor our *Anderson v. Shiflett*, 435 F.2d 1036 (10th Cir.), and *Premier Corp. v. Newsom*, 620 F.2d 219 (10th Cir.). Thus Northern "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." (*Hanson v. Denckla.*) The contacts are such that under *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

We thus find it both reasonable and fair to require Northern to conduct its defense in Kansas. *Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132. *See*, of course, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100

S.Ct. 559, 62 L.Ed.2d 490. *See also Shanks v. Westland Equipment & Parts Co.*, 668 F.2d 1165 (10th Cir.), and *Premier Corp. v. Newsom*, 620 F.2d 219 (10th Cir.).

As mentioned, the trial court initially entered judgment for the plaintiff on the contract-damages issues. This judgment in our view was correct and should be reinstated.

 As to the contract matter the parties agree that it is governed by the Uniform Commercial Code. The basic question is whether the contract to provide the bonds was a destination contract requiring shipment and timely delivery by the defendant at a particular place (U.C.C. § 2–503(3), K.S.A. § 84–2–503(3)) or a shipment contract which required only that the goods be put on a carrier with no further responsibility on the seller. Recognizing that a shipment contract is regarded as normal and a delivery contract is viewed as variant (U.C.C. § 2–503, Official Comment 5, K.S.A. § 84–2–503), the trial court concluded that the Halstead-Northern contract was a destination contract. We agree with the trial court's determination that the contract was a destination contract.

Northern's pivotal role in arranging for the delivery of the bond forms to a specific location in New York City, the Signature Company, indicates that the parties intended a destination contract. Furthermore, the obvious deadline provided by the closing date, accepted by Northern, created an obligation beyond placing the bonds on a common carrier. Northern paid the carrier it had selected for its services. The "carrier" was apparently a courier. The trial court's finding that Northern breached its contract with Halstead when it failed to deliver the fourth box of bond forms in time for the scheduled closing in New York is supported by the evidence.

 The final issue before us is whether the trial court erred in awarding damages in the amount of $44,072.99 to Halstead. We find substantial evidence in the record to justify the trial court's determination of damages and therefore affirm the trial court's award. U.C.C. § 2–715 (K.S.A. § 84–2–715), which provides for the recovery of incidental and consequential damages by the buyer in the event of a contractual breach by the seller, is broadly drafted and on its face encompasses Halstead's claim for travel expenses and loss of net investment earnings.

In construing this U.C.C. provision the Kansas Supreme Court looks to the reasonable contemplation of the parties in assessing damages. *La Villa Fair v. Lewis Carpet Mills, Inc.*, 219 Kan. 395, 548 P.2d 825.

In No. 80–1652, the appeal of Halstead Hospital, the judgment of the district court dismissing the action on jurisdictional grounds is reversed and the case is remanded to the district court for reinstatement of the damage award. In No. 80–1678, the cross-appeal of Northern Bank Note Company, the attacks on various district court rulings are rejected and the rulings are all affirmed. Costs in both No. 80–1652 and 80–1678 shall be assessed against the appellee and cross-appellant, Northern Bank Note Company.