**MARCUS FOOD COMPANY, Plaintiff,**

v.

**CROWN MEAT COMPANY, INC., Defendant.**

**Civ. A. No. 90–1545–T.**

United States District Court, D. Kansas.

Nov. 5, 1991.

Jeffery L. Carmichael, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, Kan., for plaintiff.

Susan P. Selvidge, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the defendant's motion to dismiss for lack of personal jurisdiction (Doc. 6). Plaintiff filed this diversity breach of contract action against the defendant seeking some $52,000 in damages.

In its complaint, plaintiff alleges that it is a corporation organized under the laws of Kansas with its principal place of business in Wichita, Kansas. Defendant Crown Meat Company, Inc. (Crown Meat) is alleged to be a New Jersey corporation with its principal place of business in New Jersey. Plaintiff alleges that on or about August 31, 1990, Gerry Huntington, acting

as agent for plaintiff Marcus Food Company, placed purchase orders numbered 10895 and 10899 for the purchase of two loads of IBP choice 7/up tenders. Huntington placed the orders on behalf of Marcus Food Company with Steve Midlarsky at Crown Meat. Plaintiff alleges that confirmation for each order was made, evidencing a purchase price of $4.81 per pound. Plaintiff alleges that Crown Meat has failed to supply the meat in accordance with the purchase orders. In the weeks following placement of the orders, there were several telephone conversations in which Crown Meat indicated to representatives of the plaintiff that the shipments would be made in accordance with the purchase orders. On or about November 6, 1990, after failing to provide the meat in accordance with the purchase orders, Crown Meat stated that it would not sell the meat to plaintiff. At the time Crown Meat refused to supply the meat at the agreed price, the cost of substitute product had risen to $5.31 per pound. Plaintiff alleged that Crown Meat has breached its contract with plaintiff. Plaintiff alleges that it has been damaged in an amount in excess of $50,000, representing the cost of cover and lost profits from the sale of that meat to Mercury Overseas Company. Doc. 1.

In its motion to dismiss, defendant Crown Meat alleges that it is a New York corporation with its principal office in New York. Crown Meat is also authorized to do business in New Jersey and has an office in New Jersey. Crown Meat is not authorized to do business in Kansas. Crown Meat's sole officer, director and stockholder is Armand Yannone. Crown Meat is a wholesale distributor of meat, most of which is sold in the New York metropolitan area. Crown Meat alleges that it does not do business in Kansas. Specifically, Crown Meat alleges that it has no office, telephone, or agent in Kansas; it does not own or lease any real estate in Kansas; it does not advertise or send salesmen to Kansas; it does not deliver any product into Kansas with its trucks; it has no bank accounts in Kansas; and it does not use, possess or have the use of any property in Kansas. Neither Yannone nor any representative of

Crown Meat has ever been in Kansas on behalf of Crown Meat. Crown Meat alleges that it has not by mail or otherwise entered into an express or implied contract to be performed in whole or in part by either party within the state of Kansas.

Crown Meat alleges that on or about August 31, 1990, it was contacted by a New Jersey individual, G.A. Huntington of Huntington Brokerage in Wickatuck, New Jersey, about the purchase of a quantity of meat. Huntington sent an unsigned sales ticket which purported to order meat for delivery to Preferred Storage Company at 536 Fayette Street in Perth Amboy, New Jersey. Huntington's customer was identified as Marcus Food Company of Wichita, Kansas. Huntington asked that the bill be sent to Marcus Food Company. Crown Meat and Huntington eventually disagreed over whether a contract had been made. No written confirmation was issued, no meat was delivered, and no bill was sent. After Crown Meat and Huntington disagreed, a few contacts to Crown Meat were initiated by Marcus Food by telephone and FAX. Marcus Food insisted that Huntington had made a deal in its behalf, while Crown Meat denied it. Crown Meat's only contacts with Kansas were its responses to Marcus Food's unilateral telephone and FAX contacts. *See* Doc. 7 (memorandum in support of motion to dismiss).

In response to the motion to dismiss, the plaintiff Marcus Food alleges the following facts. On or about August 31, 1990, Marcus Food placed orders for two loads of IBP choice 7/up tenders, Purchase Order Nos. 10895 and 10899, through agent Gerry Huntington with Steve Midlarsky at Crown Meat. The purchase orders evidenced a purchase price of $4.81 per pound. The bills for these purchases were to be sent to Marcus Food in Wichita, Kansas. Crown Meat has failed and refused to supply meat in accordance with the purchase orders. Crown Meat represented in phone conversations with representatives of Marcus Food and Gerry Huntington that the shipments of beef would be made in accordance with the purchase orders. On November 6, 1990, Howard Marcus and Armand "Son-

ny" Yannone, owner of Crown Meat, had several phone conversations in which Crown Meat's failure to deliver the beef as ordered was discussed. Yannone stated that Crown Meat did not have enough to cover the orders, but that he would work on it. Yannone did not dispute the existence of an agreement between Crown Meat and Marcus Food regarding the two purchase orders. On November 8, 1990, Howard Marcus and Yannone had a phone conversation in which Yannone indicated that he was working on getting one of the shipments delivered. On November 14, 1990, Howard Marcus and Yannone had a phone conversation in which Yannone offered to fill the orders if Marcus Food would give them until February 1, 1991. Crown Meat had previously done business with Marcus Food including a purchase on open account of $88,037.25 of beef from Crown Meat on April 12, 1990, and billed to Marcus Food and paid by check from Marcus Food in Wichita, Kansas. Because of its commitment of these purchases to Mercury Overseas Company, Marcus Food lost the sale of the immediate product, forcing Mercury Overseas to cover and charge back these costs to Marcus Food. Marcus Food also lost additional sales to Mercury Overseas Company. Doc. 8 (response to defendant's motion to dismiss).

■ The issue of personal jurisdiction requires a two part analysis. First, since this is a diversity case, the court must look to the law of the forum state for the statutory basis of in personam jurisdiction. *Green Country Crude, Inc. v. Avant Petroleum, Inc.*, 648 F.Supp. 1443, 1445 (D.Kan.1986). The court must determine whether the defendant's conduct falls within the scope of one of the provisions of the Kansas long arm statute, K.S.A. § 60–308(b). Second, the court must ascertain whether the exercise of jurisdiction comports with the due process requirements of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. *See J.E.M. Corp. v. McClellan*, 462 F.Supp. 1246 (D.Kan.1978).

■ The plaintiff must make a prima facie showing that the statutory and due process requirements are satisfied, thus permitting the court to exercise personal jurisdiction over the defendant. *Dirks v. Carnival Cruise Lines*, 642 F.Supp. 971, 973 (D.Kan.1986); *Carrothers Construction Co. v. Quality Service & Supply*, 586 F.Supp. 134, 135–36 (D.Kan.1984); *Ammon v. Kaplow*, 468 F.Supp. 1304, 1309 (D.Kan. 1979). Plaintiff is entitled to the benefit of any factual doubt. *Behagen v. Amateur Basketball Association of the United States*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985); *Ammon*, 468 F.Supp. at 1309.

■ The Kansas long arm statute is liberally construed to achieve the state policy of asserting jurisdiction over nonresident defendants to the extent allowed by the due process clause of the fourteenth amendment. *See, e.g., Schlatter v. Mo–Comm Futures, Ltd.*, 233 Kan. 324, 329, 662 P.2d 553 (1983) (quoting *Woodring v. Hall*, 200 Kan. 597, 602, 438 P.2d 135 (1968)). Additionally, as this court has noted, "[i]f the statute is to reach as far as due process permits, a broad statutory interpretation is necessary." *J.E.M. Corp.*, 462 F.Supp. at 1250.

The Kansas long arm statute provides in relevant part:

Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the court of this state as to any cause of action arising from the doing of any of these acts:

(1) Transaction of any business within this state;

. . . .

(5) Entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;

. . . .

K.S.A. § 60–308(b)(1, 5).

The relevant facts for the purpose of the long arm analysis are as follows. Marcus Food is a Kansas corporation. Crown Meat is a New York corporation which is authorized to do business in New Jersey. An agent of Marcus Food in New Jersey executed two purchase orders for meat to be delivered by Crown Meat. The meat was to be delivered to a warehouse in Perth Amboy, New Jersey in September and October 1990. Crown Meat was to send the bill to Kansas. Marcus Food would then send its payment from Kansas. When Crown Meat did not deliver the meat, Howard Marcus of Marcus Food made several telephone calls to the owner of Crown Meat to inquire about the failure to deliver.

The parties agree on the relevant test employed by the Kansas courts in determining whether a person is subject to jurisdiction under the transaction of business subsection of the Kansas long arm statute. The Kansas Supreme Court has stated:

> there are three basic factors which must coincide if jurisdiction is to be entertained over a nonresident on the basis of transaction of business within the state. These are (1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation . . .

*White v. Goldthwaite*, 204 Kan. 83, 88, 460 P.2d 578 (1969).

■ A defendant need not have been physically present in the state of Kansas to be found to have transacted business here for purposes of subsection (b)(1) of the long arm statute. *See Green Country Crude, Inc. v. Avant Petroleum*, 648 F.Supp. 1443, 1446 (D.Kan.1986); *Thermal Insulation Systems, Inc. v. Ark–Seal Corp.*, 508 F.Supp. 434, 442 (D.Kan.1980); *Schlatter v. Mo–Comm Futures, Ltd.*, 233 Kan. 324, 334, 662 P.2d 553 (1983). Physical presence does remain a factor in determining jurisdiction under the long arm statute. *Green Country Crude*, 648 F.Supp. at 1446; *Thermal Insulation Systems*, 508 F.Supp. at 442. It is erroneous to predicate jurisdiction under (b)(1) on a defendant's activities in Kansas which are unrelated to the transaction giving rise to the plaintiff's claim for relief. The statute specifically requires that the transaction of business be in connection with the cause of action in question. *Schlatter*, 233 Kan. at 334, 662 P.2d 553.

■ The sending of the bill to Kansas and the remitting of payment from Kansas are insufficient contacts to create jurisdiction under (b)(1). *See Marcus Food Co. v. Family Foods of Tallahassee, Inc.*, 729 F.Supp. 753, 757 (D.Kan.1990) (payments to be sent to plaintiff in Kansas insufficient to constitute transaction of business in Kansas).

■ Based on the facts before it, the court must conclude that plaintiff has not made a prima facie showing that the defendant was transacting business in Kansas to support jurisdiction under K.S.A. 60–308(b)(1). Resolving all doubts in plaintiff's favor, the facts indicate that the defendant did not purposefully do any act or consummate any transaction in Kansas. The court cannot consider the previous transaction between the parties which plaintiff alleges as a basis for jurisdiction. *Schlatter*, 233 Kan. at 334, 662 P.2d 553.

■ Subsection (b)(5) of the long arm statute extends the exercise of personal jurisdiction in contract cases in which the nonresident defendant may have committed a breach without ever entering Kansas. *Green Country Crude*, 648 F.Supp. at 1449. The requirements of subsection (b)(5) are met if the contract is to be performed in whole or in part by either party in Kansas. *Id.* (quoting *Carrothers Construction Co. v. Quality Service & Sup-*

*ply,* 586 F.Supp. 134, 137 (D.Kan.1984)). " 'Performance of a contract' is the timely execution of the acts required by the agreement, at the location and in the manner stipulated." *Id.*

The contract at issue required Crown Meat to deliver the meat to a warehouse in Perth Amboy, New Jersey and to send the bill to Kansas. These acts were to constitute the defendant's performance of the contract. The contract required Marcus Food to remit payment from Kansas. This act was to be the plaintiff's performance of the contract. Based on plaintiff's allegations, the contract was to be performed in part in Kansas in the following two particulars: Crown Meat was to mail the bill to Marcus Food in Kansas and Marcus Food was to remit payment to Crown Meat from Kansas. *See Marcus Food Co. v. Family Foods of Tallahassee, Inc.,* 729 F.Supp. 753, 757 (D.Kan.1990) (the requirement that plaintiff submit invoices from Kansas and that defendant make payment to Kansas satisfies subsection (b)(5)); *see also Continental American Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1312 (10th Cir.1982) (receipt of two payments in Kansas circumstantial proof that parties agreed that some performance would be rendered in Kansas); *Federal Deposit Insurance Corp. v. Culver,* 640 F.Supp. 725, 727 (D.Kan.1986) (note payments to be made to bank's offices in Kansas constitute partial performance of the contract in Kansas). Crown Meat expected the contract to be performed in Kansas to the extent that payment from the plaintiff in Kansas was anticipated by the parties. *See Halstead Hospital, Inc. v. Northern Bank Note Co.,* 680 F.2d 1307, 1309 (10th Cir.1982). The defendant's conduct falls within the language of subsection (b)(5) of the long arm statute.

The second part of the personal jurisdiction analysis involves determining whether the exercise of personal jurisdiction over the defendant comports with the requirements of due process. The Tenth Circuit has endorsed a two part inquiry: first, whether the defendant has established minimum contacts with the forum state representing an effort by the defendant to purposefully avail itself of the privilege of conducting activities within the forum state, and second, whether the exercise of personal jurisdiction would comport with fair play and substantial justice. *Rambo v. American Southern Insurance Co.,* 839 F.2d 1415, 1419 & n. 6 (10th Cir.1988) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)). Moreover,

> Jurisdiction over corporations may be either general or specific. Jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum state is "specific jurisdiction." In contrast, when the suit does not arise from or relate to the defendant's contact with the forum and jurisdiction is based on the defendant's presence or accumulated contacts with the forum, the court exercises "general jurisdiction."

*Rambo,* 839 F.2d at 1418; *see also Kennedy v. Freeman,* 919 F.2d 126, 128 n. 2 (10th Cir.1990). There is no allegation of accumulated contacts with the forum sufficient to find general jurisdiction; thus, if personal jurisdiction may be exercised over the defendant, it must arise from the defendant's contacts with Kansas from the specific contractual transaction before the court.

Under the due process analysis, the "constitutional touchstone" is "whether the defendant purposely established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The defendant's conduct and the connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). The defendant must have purposefully availed itself of the privilege of conducting activities in the forum state. *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958);

*Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239-40. The purposeful availment requirement ensures that a defendant will not be sued in a foreign jurisdiction solely as a result of the unilateral activity of another party or a third person. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183. Jurisdiction is proper when the contacts proximately result from actions by the defendant itself which create a substantial connection with the forum state. *Id.* Jurisdiction may not be avoided merely because the defendant did not physically enter the forum state, as long as the defendant's actions are purposely directed toward residents of the forum state. *Id.* at 476, 105 S.Ct. at 2184.

■ The contract portion of the Kansas long arm statute is a single transaction provision. This provision cannot, however, be separated from due process doctrines. Under the due process analysis, the court must examine the context in which the single transaction took place. *Halstead Hospital, Inc. v. Northern Bank Note Co.,* 680 F.2d 1307, 1310 (10th Cir. 1982). The court must therefore reject the plaintiff's argument that the existence of a prior transaction between the parties is relevant to the determination of personal jurisdiction.

■ Once it has been determined that the defendant purposefully established contacts with the forum state, the court may consider other factors, including: the burden on the defendant; the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the states in furthering substantive social policies. *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987). When a defendant, who has purposefully directed his activities at residents of the forum state, seeks to defeat

jurisdiction, he must present a compelling case that jurisdiction would be unreasonable. *Id.*

■ The purposeful availment analysis turns upon whether the defendant's contacts are attributable to its own actions or solely to the actions of the plaintiff. *Rambo v. American Southern Insurance Co.,* 839 F.2d 1415, 1420 (10th Cir.1988). In the present case, the defendant's contacts with the forum state were not attributable to its own actions. The defendant's actions were not purposefully directed to a resident of the forum state. All contacts leading up to the alleged contract were made by a New Jersey resident in New Jersey. The unilateral actions of Marcus Food and its agents in soliciting Crown Meat in New Jersey, in requesting that the bill be sent to Kansas, and in telephoning Crown Meat from Kansas are insufficient to establish minimum contacts with Kansas. The defendant did not purposefully avail itself of the privilege of conducting activities within the state of Kansas.

Personal jurisdiction cannot be exercised consistent with due process. The defendant has not entered Kansas, did not initiate contract negotiations with a Kansas resident, did not engage in contract negotiations via mail, telephone or other contacts with Kansas, and did not agree to deliver the goods to Kansas. The contractual relationship here arose at the initiative of the resident plaintiff, not the nonresident defendant. Plaintiff's New Jersey agent made all the contacts with defendant in New Jersey. The parties did agree to perform part of their obligations in Kansas. The bill was to be sent to Kansas and payment was to be made from Kansas. Agents of the plaintiff placed telephone calls to Crown Meat to discuss the delivery of the meat. However, discounting the contacts that resulted from the plaintiff's unilateral conduct, there are no voluntary contacts by the defendant with the forum state. The exercise of personal jurisdiction over Crown Meat would not be consistent with the requirements of due process.

522

IT IS BY THE COURT THEREFORE
ORDERED that defendant's motion to dis-
miss for lack of personal jurisdiction (Doc.
6) is hereby granted.