FEDERATED RURAL ELECTRIC INSURANCE CORPORATION, Plaintiff,

v.

KOOTENAI ELECTRIC COOPERATIVE, Defendant.

FEDERATED RURAL ELECTRIC INSURANCE CORPORATION, Plaintiff,

v.

FALL RIVER RURAL ELECTRIC COOPERATIVE, INC., Defendant.

FEDERATED RURAL ELECTRIC INSURANCE CORPORATION, Plaintiff,

v.

RURAL ELECTRIC COMPANY, Defendant.

FEDERATED RURAL ELECTRIC INSURANCE CORPORATION, Plaintiff,

v.

LOST RIVER ELECTRIC COOPERATIVE, INC., Defendant.

FEDERATED RURAL ELECTRIC INSURANCE CORPORATION, Plaintiff,

v.

PRAIRIE POWER COOPERATIVE, INC., Defendant.

FEDERATED RURAL ELECTRIC INSURANCE CORPORATION, Plaintiff,

v.

SALMON RIVER ELECTRIC COOPERATIVE, Defendant.

FEDERATED RURAL ELECTRIC INSURANCE CORPORATION, Plaintiff,

v.

MIDSTATE ELECTRIC COOPERATIVE, Defendant.

FEDERATED RURAL ELECTRIC
INSURANCE CORPORATION,
Plaintiff,

v.

DOUGLAS ELECTRIC COOPERATIVE,
INC., Defendant.

FEDERATED RURAL ELECTRIC
INSURANCE CORPORATION,
Plaintiff,

v.

HOOD RIVER ELECTRIC
COOPERATIVE,
Defendant.

FEDERATED RURAL ELECTRIC
INSURANCE CORPORATION,
Plaintiff,

v.

LANE ELECTRIC COOPERATIVE,
INC., Defendant.

FEDERATED RURAL ELECTRIC
INSURANCE CORPORATION,
Plaintiff,

v.

NESPELEM VALLEY ELECTRIC
COOPERATIVE, INC.,
Defendant.

FEDERATED RURAL ELECTRIC
INSURANCE CORPORATION,
Plaintiff,

v.

OKANOGAN COUNTY ELECTRIC
COOPERATIVE, INC.,
Defendant.

FEDERATED RURAL ELECTRIC
INSURANCE CORPORATION,
Plaintiff,

v.

TANNER ELECTRIC COOPERATIVE,
Defendant.

FEDERATED RURAL ELECTRIC
INSURANCE CORPORATION,
Plaintiff,

v.

OHOP MUTUAL LIGHT COMPANY,
Defendant.

FEDERATED RURAL ELECTRIC
INSURANCE CORPORATION,
Plaintiff,

v.

LINCOLN ELECTRIC COOPERATIVE,
Defendant.

FEDERATED RURAL ELECTRIC
INSURANCE CORPORATION,
Plaintiff,

v.

INLAND POWER & LIGHT
CO., Defendant.

Nos. 91–4083–R to 91–4098–R.

United States District Court,
D. Kansas.

Jan. 13, 1993.

Dale E. Fredericks, Bruce D. Celebrezze, Robert G. Miller, Sheppard, Mullin, Richter & Hampton, San Francisco, CA, Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for plaintiff Federated Rural Elec. Ins. Corp.

Wesley A. Weathers, Weathers & Riley, Topeka, KS, David F. Jurca, Andrew J. Kinstler, Helsell, Fetterman, Martin, Tood & Hokanson, Seattle, WA, for defendants Kootenai Elec. Co-op., Fall River Rural Elec. Co-op., Inc., Rural Elec. Co., Lost River Elec. Co-op., Inc., Midstate Elec. Co-op., Douglas Elec. Co-op., Inc., Hood River Elec. Co-op., Lane Elec. Co-op., Inc. and Inland Power & Light Co.

Wesley A. Weathers, Weathers & Riley, Topeka, KS, John D. Lowery, Riddell, Williams, Bulitt & Walkinshaw, Seattle, WA, for defendants Prairie Power Co-op., Inc., Nespelem Valley Elec. Co-op., Inc., Okanogan County Elec. Co-op., Inc. and Ohop Mut. Light Co.

Steve A. Leben, Law Offices of Steve Leben, Overland Park, KS, Gregory E. Keller, Lynne M. Cohee, Hillis, Clark, Martin & Peterson, P.S., Seattle, WA, for defendants Salmon River Elec. Co-op., Tanner Elec. Co-op. and Lincoln Elec. Co-op.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

These cases have been consolidated for pretrial purposes and are currently before the court upon motions to dismiss for lack of personal jurisdiction. The court shall grant the motions to dismiss because plaintiff has failed to establish that defendants have purposefully maintained the minimum contacts with Kansas to satisfy the constitutional requirements for the exercise of specific or general jurisdiction over defendants.

Plaintiff is an insurance company which specializes in providing insurance for rural electric and telephone cooperatives and similar organizations. Plaintiff's policyholders are stockholders and eligible to participate in the election of plaintiff's board of directors and to serve on plaintiff's board of directors. A portion of the premiums paid by policyholders is invested by plaintiff into the National Rural Utilities Cooperative Financial Corporation, which makes the funds available to rural electric cooperatives for borrowing.

Each defendant is a rural electric cooperative providing service primarily in the states of Washington, Idaho and Oregon. These cases arise from litigation which, in turn, arose from defendants' participation, along with 76 other cities, utility districts, and rural electric cooperatives, in a project to construct two nuclear power plants in the Pacific Northwest. In 1976, defendants formally agreed to participate in this project with the Washington Public Power Supply System (WPPSS). WPPSS is a municipal corporation with the authority to acquire, build, operate and own power plants. *Chemical Bank v. Washington Public Power Supply System,* 99 Wash.2d 772, 666 P.2d 329, 331 (1983). It also has the authority to issue revenue bonds. *Id.*

The 1976 agreement to build the two plants followed a previous WPPSS project to build three nuclear power plants. Each of the two power plants was to be built at a different location and joined in some fashion with one of the earlier authorized nuclear plants. Bonds in the amount of $2.25 billion were issued by WPPSS for construction of the two plants. In 1982, because of inflation, high interest rates and cost overruns, it was clear that enough money could not be raised to complete construction of the plants. The project was terminated.

When the project failed, defendants were sued in litigation brought by or on behalf of bondholders, which was consolidated in multidistrict litigation (MDL 551). Defendants were also sued in what the parties in these cases denominate as "cost-sharing" litigation, which concerned how money raised for the project was allocated in connection with the construction of the related nuclear power plants. The cost-sharing litigation was started on October 26, 1982. Plaintiff paid for defendants' litigation expenses in the multidistrict litigation and in the cost-sharing litigation to a point and then ceased.

In the cases at bar, plaintiff seeks a determination of whether it is obliged under certain insurance policies to pay defendants' litigation expenses and whether defendants should pay plaintiff tort and contract damages connected with plaintiff's past reimbursement of defendants' expenses. The insurance policies in question are liability policies for defendants' directors, officers and managers, referred to as "DOM insurance." Plaintiff asserts (except in Case Nos. 91–4086, 91–4087, 91–4091, 91–4094, and 91–4095) that defendants misrepresented the probability of future litigation before purchasing policies or increasing the limits on preexisting policies issued by plaintiff. All of the above-captioned cases include claims alleging that plaintiff is not responsible for defendants' expenses arising from the cost-sharing litigation.

Plaintiff is an insurance company incorporated in Wisconsin. It operates in more than thirty states from coast to coast. Plaintiff maintained its principal place of business in Madison, Wisconsin until it moved to Kansas in late September 1982.

Defendants are rather small electric cooperatives that buy electric power to supply their customers. Defendants' business is limited to their service areas. They do

not sell electricity or send employees or officers to Kansas. They do not own property or solicit business in Kansas. Defendants bought and renewed the insurance policies in question through an area representative of plaintiff. This representative, Patricia Phillips, was located either in Wisconsin or Washington during the relevant times of this litigation. She visited each defendant annually or semi-annually to review its insurance. Plaintiff's counsel has stated that the policies were originally acquired from plaintiff while plaintiff was located in Wisconsin. The policies and renewals were countersigned in Spokane, Washington. Defendants did not make any written or oral communications into Kansas to purchase or renew the insurance policies in question before the bondholder and cost-sharing litigation was filed.[1]

Since plaintiff moved its headquarters to Kansas, defendants have continued to buy and renew insurance from plaintiff. It is estimated that defendants have purchased or renewed more than 400 policies since plaintiff moved to Kansas and paid more than $5.4 million in premiums to plaintiff in Kansas. Defendants have also made hundreds of contacts or claims with plaintiff in Kansas in regard to suits filed against defendants. In turn, plaintiff has paid millions of dollars from Kansas to handle claims made by defendants, including claims under the policies in question.

To reiterate, defendants challenge this court's personal jurisdiction over them. This is a diversity case. Therefore, our exercise of personal jurisdiction must comport with the standards of the Kansas long-arm statute, K.S.A. 60–308(b), and the United States Constitution. *Equifax Services, Inc. v. Hitz,* 905 F.2d 1355, 1357 (10th Cir.1990). The Tenth Circuit has stated that "these inquiries are essentially the same, because '[t]he Kansas long arm statute [Kan.State.Ann. § 60–308(b) ] is liberally construed to assert personal jurisdiction over nonresident defendants to the full ex-

tent permitted by the due process clause of the Fourteenth Amendment to the U.S. Constitution.' " *Id.,* quoting *Volt Delta Resources, Inc. v. Devine,* 241 Kan. 775, 740 P.2d 1089, 1092 (1987).

The "touchstone" for our analysis must be whether defendants purposefully established minimum contacts in Kansas. *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987); *Equifax Services, Inc. v. Hitz, supra.* Jurisdiction over a corporation may be either general or specific. *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1418 (10th Cir.1988). Specific jurisdiction exists when the lawsuit allegedly arises from the defendant's contacts with the forum state which are sufficient to comport with the Constitution. General jurisdiction exists when a defendant's presence or contacts with a forum state are sufficient to comport with the Constitution, but the lawsuit does not arise from those contacts. *Id.*

For specific jurisdiction, "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Asahi Metal Industry Co. v. Superior Court, supra,* quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). " 'Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985), quoting *McGee International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (emphasis in original). The contacts and connection with the forum state should be such that the defendant should "reasonably anticipate being haled into court there." *Id.*

---

**1.** Salmon River Electric Cooperative made application for its DOM insurance in July 1982 after visiting with Patricia Phillips. The policy was issued on January 1, 1983, after plaintiff's move to Kansas, but was countersigned by

plaintiff's agent at Spokane. Rural Electric Company increased the limits of its DOM policy effective January 1, 1983. But, the renewal certificate still showed plaintiff's Wisconsin address and was countersigned in Spokane.

471 U.S. at 474, 105 S.Ct. at 2183, quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1978).

> " 'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' "
>
> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. [770], at 774 [104 S.Ct. 1473 at 1478, 79 L.Ed.2d 790 (1984)]; *World–Wide Volkswagen Corp. v. Woodson, supra*, [444 U.S.] at 299 [100 S.Ct. at 568], or of the "unilateral activity of another party or a third person," *Helicopteros Nacionales de Colombia, S.A. v. Hall, supra*, [466 U.S. 408] at 417 [104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984)].

*Burger King Corp. v. Rudzewicz, supra*, 471 U.S. at 474–75, 105 S.Ct. at 2183, quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

Examples of cases where the Supreme Court held that personal jurisdiction could not be based upon the unilateral acts of another party were described in a footnote of the *Burger King* opinion.

> Applying this principle, the Court has held that the Due Process Clause forbids the exercise of personal jurisdiction over an out-of-state automobile distributor whose only tie to the forum resulted from a customer's decision to drive there, *World–Wide Volkswagen Corp. v. Woodson, supra;* over a divorced husband sued for child-support payments whose only affiliation with the forum was created by his former spouse's decision to settle there, *Kulko v. California Superior Court*, 436 U.S. 84 [98 S.Ct.

1690, 56 L.Ed.2d 132] (1978); and over a trustee whose only connection with the forum resulted from the settlor's decision to exercise her power of appointment there, *Hanson v. Denckla*, 357 U.S. 235 [78 S.Ct. 1228, 2 L.Ed.2d 1283] (1958). In such instances, the defendant has had no "clear notice that it is subject to suit" in the forum and thus no opportunity to "alleviate the risk of burdensome litigation" there. *World–Wide Volkswagen Corp. v. Woodson, supra* [444 U.S.], at 297 [100 S.Ct. at 567].

471 U.S. at 475 n. 17, 105 S.Ct. at 2183–84 n. 17.

We would add that, under Justice O'Connor's plurality opinion in *Asahi Metal Industry Co. v. Superior Court, supra*, 480 U.S. at 112, 107 S.Ct. at 1032, simply putting a product in the stream of commerce, without more, is not sufficient to satisfy the constitutional standard for personal jurisdiction even if the defendant is aware that the product will appear in the forum state.

■ If we decide that defendant purposefully established minimum contacts with Kansas, then these contacts must be considered in light of other facts "to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Id.*, quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Pertinent considerations include: the burden on the defendant; the forum state's interest in adjudicating the dispute; the plaintiff's interest in a convenient and effective forum; the judicial system's interest in the efficient resolution of controversies; and the states' interest in furthering fundamental substantive social policies. *Id.* 471 U.S. at 477, 105 S.Ct. at 2184, quoting *World–Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S. at 292, 100 S.Ct. at 564.

■ The burden of proof applicable to this matter was explained in *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.1984) *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985):

The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

## Specific Jurisdiction

Plaintiff asserts five categories of contacts by defendants with Kansas which plaintiff claims are sufficient for this court to exercise personal jurisdiction over defendants. These contacts are: 1) participation in the marketing and sale of WPPSS bonds across the nation, including to over 150 Kansas residents; 2) purchase of insurance policies from plaintiff, paying more than $5.4 million to plaintiff in Kansas as premiums; 3) receiving payment from plaintiff in Kansas of in excess of $20 million in connection with the bondholder and cost-sharing litigation; 4) making "hundreds" of demands upon plaintiff in Kansas for benefits allegedly due under insurance policies issued by plaintiff; and 5) making numerous oral and written contacts with plaintiff in Kansas in connection with the bondholder and cost-sharing litigation. Among these contacts are alleged tortious misrepresentations made by some defendants in order to obtain insurance from plaintiff or to increase the limits on policies already issued from plaintiff.

■ We do not believe these contacts are sufficient to establish specific jurisdiction over defendants. First, we shall consider the sale of WPPSS bonds. The sale of WPPSS bonds in Kansas is so attenuated from defendants and from the cause of action, we do not believe it provides good grounds for the exercise of personal jurisdiction over defendants. Defendants did not issue, sell or advertise the bonds. Defendants did not receive revenue from the bonds. Defendants agreed to participate in the project and to contribute money to WPPSS for costs, including debt service on bonds. This obligation was made known to purchasers of the bonds. But, we do not construe this commitment by defendants to pay money to a Washington-based power supply system as a purposeful availment of the privilege of conducting activities in Kansas. See *Ten Mile Industrial Park v. Western Plains Service Corporation*, 810 F.2d 1518 (10th Cir.1987) (involvement by South Dakota and North Dakota savings and loan associations in participation agreement with a separate corporation owned by the savings and loan associations did not amount to purposeful availment of activities in state where the corporation made loans with money advanced by savings and loan associations).

On the whole, we believe defendants' "involvement" in the bond sale is less significant than sending a product into the stream of commerce with the knowledge that the product may end up in Kansas. Of course, under the plurality opinion in *Asahi*, the placement of a product in the stream of commerce did not suffice for personal jurisdiction.

Plaintiff has cited two cases in support of this argument for personal jurisdiction. We believe they are distinguishable. In *Rosedale State Bank & Trust Co. v. Stringer*, 2 Kan.App.2d 331, 579 P.2d 158 (1978), there was a contract between a Kansas bank and a Missouri resident in the form of a promissory note. There was no such direct contract or contact between defendants and the Kansas bondholders. Similarly, *Wichita Federal Savings & Loan Ass'n v. Landmark Group, Inc.*, 674 F.Supp. 321 (D.Kan.1987) involved fraud claims arising from telephone communications make by brokers into Kansas. No direct communications were made by defendants to Kansas bondholders. Instead, the agreement made by defendants with WPPSS was published by others to Kansas bondholders.

The sale of WPPSS bonds in Kansas is also attenuated from the cause of action in this case. Obviously, this case would not have been filed if the project was never started and no bonds were ever sold. But, it is just as obvious that this case would still have been filed if bonds were never sold in *Kansas,* but in other states. Moreover, the cost-sharing litigation claims, which appear in each of the consolidated cases and are the only claims in Case Nos. 91–4087, 91–4094 and 91–4095, would have arisen if no bondholder suits had been filed. For specific jurisdiction to be present, the litigation in question must have a basis in the contacts between the defendants and the forum state. *Rambo v. American Southern Ins. Co., supra.* We believe the connection between this litigation and the sale of WPPSS bondholders is so attenuated that it does not provide an adequate basis for personal jurisdiction over defendants. See *Dirks v. Carnival Cruise lines,* 642 F.Supp. 971 (D.Kan.1986) (promotional materials mailed to Kansas do not provide adequate basis for personal jurisdiction in Kansas over out-of-state defendants for personal injury on cruise liner); see also, *Wims v. Beach Terrace Motor Inn, Inc.,* 759 F.Supp. 264 (E.D.Pa.1991) (mailing of promotional materials into forum state does not provide basis for exercise of specific or general jurisdiction for personal injury suffered out-of-state); *Chedid v. Boardwalk Regency Corporation,* 756 F.Supp. 941 (E.D.Va.1991) (same).

Plaintiff has argued that defendants' payments of premiums into Kansas support personal jurisdiction in this case. We disagree. Plaintiff admits that defendants "originally acquired their policies from [plaintiff] while [plaintiff] was located in the state of Wisconsin." Plaintiff's Opposition to Defendants' Motions to Dismiss, Docket No. 170 at p. 24. The policies were renewed through contacts with plaintiff's area representative in Washington. Defendants were informed through a newsletter published in late August 1982 that plaintiff was moving its central office to Kansas effective September 27, 1982. Exhibit 3 to Affidavit of Andrew J. Kinstler, Docket No. 121. At some point after the move, defendants paid premiums to Kansas. These premiums have amounted to several million dollars over the years since plaintiff has been in Kansas.

The payment of premiums into Kansas is not sufficient to establish personal jurisdiction over defendants for two reasons. First, it was the unilateral action of plaintiff, in moving its central office to Kansas, which caused defendants to pay premiums in Kansas. The unilateral activity of another party "is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales De Columbia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). The fact that plaintiff moved its business to Kansas after defendants contracted to buy insurance does not establish sufficient contacts between defendants and Kansas for this court to exercise jurisdiction. *Pollution Control Industries v. Van Gundy,* 759 F.Supp. 472, 478 (N.D.Ind.1991). See also, *Rambo v. American Southern Insurance Co.,* 839 F.2d 1415 (10th Cir.1988) (no jurisdiction over insurance company on the basis of communications with insured who had moved to Oklahoma after the policy was issued and the claim arose); *Hunt v. Erie Ins. Group,* 728 F.2d 1244 (9th Cir. 1984) (no jurisdiction over insurance company on the basis of communications with insured in California when insured had been moved there for treatment after policy was issued and claim arose); see also, *Davis v. American Family Mutual Ins. Co.,* 861 F.2d 1159 (9th Cir.1988) (following *Hunt* ).

Even if the premiums paid and communications made to Kansas did not occur as a result of plaintiff's "unilateral activity," we still believe the payment of premiums or making inquiries to an insurance company in a different state is not a sufficient "minimum contact" to warrant the exercise of personal jurisdiction. See *Commercial Casualty Ins. Co. v. BSE Management, Inc.,* 734 F.Supp. 511 (N.D.Ga.1990); *Capitol Indemnity Corp. v. Certain Lloyds Underwriters and/or London Compa-*

*nies,* 487 F.Supp. 1115 (W.D.Wis.1980); *Royal Globe Ins. Co. v. Logicon, Inc.,* 487 F.Supp. 1245 (N.D.Ill.1980); *Golden Rule Ins. Co. v. Michely,* 198 Ill.App.3d 314, 144 Ill.Dec. 528, 555 N.E.2d 1047 (1990); *Cameron–Brown Co. v. Daves,* 83 N.C.App. 281, 350 S.E.2d 111 (1986); see also, *Rambo v. American Southern Ins. Co., supra,* 839 F.2d at 1418–19 (citing cases for proposition that telephone and mail contacts ordinarily do not satisfy due process standards); *Marcus Food Co. v. Crown Meat Co., Inc.,* 779 F.Supp. 514 (D.Kan.1991) (sending bill to Kansas for services performed in New Jersey is insufficient to establish minimum contacts with Kansas); see generally, *Health Communications, Inc. v. Mariner Corporation,* 860 F.2d 460, 465 (D.C.Cir.1988) (out-of-state purchaser does not avail itself of seller's state law merely by purchasing from seller); *Green Country Crude, Inc. v. Avant Petroleum, Inc.,* 648 F.Supp. 1443 (D.Kan.1986) (same).

Again, we find the cases cited by plaintiff in support of its argument to be distinguishable. First, it should be noted that these cases (*Continental American Corp. v. Camera Controls Corp.,* 692 F.2d 1309 (10th Cir.1982); *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933 (10th Cir.1977); *Slawson v. Hair,* 716 F.Supp. 1373 (D.Kan.1989); *Insulation Corporation of America v. Sportsplex, Inc.,* 716 F.Supp. 540 (D.Kan.1989); *Carrothers Construction Co. v. Quality Service & Supply,* 586 F.Supp. 134 (D.Kan.1984)) involve commercial contracts, not insurance contracts. Second, these cases involve contracts knowingly entered with Kansas plaintiffs to be performed in Kansas. Finally, the *Slawson* case involves allegations of fraudulent misrepresentations made to Kansas residents.

Plaintiff also argues that its payment of funds from Kansas to defendants to reimburse litigation expenses is a contact which supports the exercise of jurisdiction. However, we consider this a unilateral act of plaintiff, not an action by which defendants purposefully availed themselves of the privileges of conducting business in Kan-

sas. Therefore, we reject this argument for the exercise of personal jurisdiction.

Similarly, the "hundreds" of contacts between defendants and plaintiff regarding litigation, including the complicated litigation which is the source of this lawsuit, cannot be the basis for personal jurisdiction in these cases for two reasons. First, the contacts were made with plaintiff in Kansas because plaintiff moved to Kansas, not because of defendants' purpose to do business in Kansas. Second, the contacts accumulated after the cause of action arose; i.e., after the issuance of the insurance policies and after claims were made under those policies. To provide a basis for specific jurisdiction, the cause of action must arise from the contacts in question. See *Farmers Insurance Exchange v. Portage La Prairie Mutual Ins. Co.,* 907 F.2d 911, 913 (9th Cir.1990) (little weight should be given to post-accident communications between insurance companies in a coverage dispute); *Ten Mile Industrial Park v. Western Plains Service, supra,* 810 F.2d at 1528 (acquisition of land in forum state by defendants after cause of action arose does not support exercise of personal jurisdiction); *Johnson v. Summa Corp.,* 632 F.Supp. 122 (E.D.Pa.1985) (post-accident contacts are not relevant to jurisdiction in personal injury action); see also, *Doe v. National Medical Services,* 974 F.2d 143 (10th Cir.1992) (defendant laboratory's transaction of thousands of tests for four Colorado companies does not support specific jurisdiction in Colorado over defendant for allegedly misperforming test involving Colorado plaintiff whose sample was sent to defendant from a lab in California). The cause of action in this case does not arise from the premiums or communications sent by defendants to plaintiff in Kansas. Therefore, these contacts do not provide a constitutional basis for the exercise of specific jurisdiction.

Among the "communications" asserted by plaintiff as grounds for the exercise of personal jurisdiction are the alleged misrepresentations by some defendants to plaintiff to obtain insurance or increase the lim-

its upon existing insurance policies.[2] These communications are discussed in the context of that section of the Kansas long-arm statute, K.S.A. 60–308(b)(2), which extends jurisdiction over persons committing tortious acts in Kansas.

The court has considerable doubt as to whether plaintiff has established a prima facie case of jurisdiction under that section of the long-arm statute. Under Illinois cases, which Kansas courts have considered informative in construing the Kansas long-arm statute (see *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731, 733–34 (1985)), the "last-act" doctrine does not command that the site of the tort is where the economic loss was felt. *Turnock v. Cope*, 816 F.2d 332 (7th Cir.1987) ("[a]n Illinois court does not acquire jurisdiction under the 'last act' doctrine simply because an economic loss is felt in Illinois when all conduct contributing to the injury occurred outside Illinois"); contrast, *Heritage House Restaurants v. Continental Funding*, 906 F.2d 276, 282–83 (7th Cir.1990) (it is the communications from a nonresident to Illinois that form the basis for jurisdiction, not the economic loss experienced in Illinois). When the relevant communications in this case were not made to Kansas, we find it unlikely that the location of the tort for jurisdictional purposes would be Kansas, in spite of alleged economic loss suffered in Kansas after plaintiff moved. As defendant has argued, plaintiff could have sued to rescind the insurance policy on the basis of the alleged misrepresentations even if no economic loss had been suffered.

But, even if the requirements of the Kansas statute were satisfied, the communications do not provide a constitutional basis for the exercise of jurisdiction. The alleged communications were made to defendant's agent in the Pacific Northwest while defendant's principal place of business was in Wisconsin. Defendants could not have reasonably foreseen when the communications were made that they would be haled into a Kansas court to answer for those communications. The Supreme Court has stated that "the foreseeability that is critical to the due process analysis ... is that the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S. at 297, 100 S.Ct. at 567. Plaintiff's claims of tortious misrepresentation do not establish a reasonable foreseeability that defendants would be sued in this court.

In summary, the court has analyzed the contacts which plaintiff asserts provide grounds for the exercise of specific jurisdiction over defendants in these cases. We have discussed the contacts individually and found them insufficient to establish jurisdiction. Our conclusion would not be different after considering the contacts collectively. As in the case of *Marcus Food Co. v. Crown Meat Co., Inc., supra*, 779 F.Supp. at 521, the defendants in these cases have not entered Kansas; did not intitiate contract negotiations with a Kansas resident; did not engage in contract negotiations via mail, telephone or other contacts with Kansas; and did not agree to deliver anything to Kansas. As a result of plaintiff's unilateral action of moving to Kansas, defendants mailed premiums, renewed policies, and made communications to plaintiff in Kansas. However, these contacts should not be considered grounds for exercising personal jurisdiction because they are not attributable to defendants' purposeful actions; nor do plaintiff's claims arise from defendants' communications to Kansas. The sale of bonds in Kansas is attenuated from defendants and from the cause of action in these cases. Accordingly, we find that plaintiff has not established a *prima facie* showing for the exercise of specific jurisdiction in these cases.

*General Jurisdiction*

The Tenth Circuit reviewed the principles of general jurisdiction in *Doe v. National Medical Services, supra*, 974 F.2d at 146:

Under general jurisdiction, a nonresident defendant may be subject to a

---

**2.** However, no claims of misrepresentation are made in Case Nos. 91–4086, 91–4087, 91–4091, 91–4094 and 91–4095.

state's jurisdiction even where the alleged injury is unrelated to the defendant's contacts with the forum state. If the defendant's contacts with the state are strong enough, the state may assert jurisdiction over the defendant on *any* matter, whether or not it arises out of the defendant's contacts with the state. *See Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 446, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952).

For general jurisdiction, the defendant's contacts with the state must be greater than those required for specific jurisdiction. Rather than looking at a specific injury linked to particular contacts, we look to the defendant's general contacts with the state. We look to see whether there are "continuous and systematic general business contacts," *Helicopteros,* 466 U.S. at 415, 104 S.Ct. at 1872; *see also Perkins,* 342 U.S. at 438, 72 S.Ct. at 414, so that the defendant could reasonably anticipate being haled into court in that forum. *See Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

As with specific jurisdiction, the unilateral activity of another party "is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873.

In *Doe,* the Tenth Circuit held there were insufficient grounds for general jurisdiction in Colorado, despite the defendant laboratory's completion of thousands of tests for four Colorado clients. The Tenth Circuit stated:

> In the present case, we find that [defendant's] contacts with the state of Colorado are insufficient to support an assertion of general jurisdiction. [Defendant] does not have traditional general business contacts with Colorado. It owns no property and has no agents in the state. It has no presence in Colorado and solicits no business there.

*Id.* Defendants in these cases lack the same traditional business contacts with the state in which these cases have been brought. We do not believe the contacts asserted by plaintiff are the type of "continuous and systematic general business contacts" upon which a court can rely to assert general jurisdiction. Therefore, we reject plaintiff's claim of general jurisdiction.

*Waiver*

Finally, plaintiff contends that defendants have waived any personal jurisdiction defense by filing counterclaims against plaintiff in these cases. Defendants filed these counterclaims with the provision that defendants were challenging the court's personal jurisdiction and would not pursue the counterclaims if the court sustained this challenge. The counterclaims involve issues of bad faith, contract interpretation, statutory application and attorney's fees assessment, which, in the language of FED.R.CIV.P. 13(a), arise from the same "transaction or occurrence that is the subject matter of the [plaintiff's] claim." Therefore, under the Federal Rules of Civil Procedure, these are compulsory counterclaims which may be asserted without waiving any objection to personal jurisdiction. *Campbell v. Bartlett,* 975 F.2d 1569, 1574 n. 8 (10th Cir.1992). However, even if the counterclaims were categorized as permissive, we concur with the case authority holding that the assertion of permissive counterclaims does not constitute a waiver of a jurisdictional defense. E.g., *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1330 n. 1 (9th Cir.1984) *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). For these reasons, we reject plaintiff's claim of waiver.

*Conclusion*

Based on the foregoing, the court holds that there is no factual basis which authorizes the court to exercise personal jurisdiction over defendants. Accordingly, the defendants' motions to dismiss are granted, and the complaints in the above-captioned cases are dismissed without prejudice.

IT IS SO ORDERED.