**Vernon and Bonnie RAMBO,**
**Plaintiffs/Appellants,**

v.

**AMERICAN SOUTHERN INSURANCE COMPANY, Mid South Claim Services, Inc., and W.T.R., Inc., Defendants/Appellees.**

No. 85–2417.

United States Court of Appeals,
Tenth Circuit.

Feb. 26, 1988.

Robert T. Keel, Keel and Kulmacz, Oklahoma City, Okl., for plaintiffs/appellants.

Cary E. Hiltgen, Law Offices of B.J. Cooper, Oklahoma City, Okl., for defendants/appellees.

Before LOGAN and ANDERSON, Circuit Judges, and CONWAY,* District Judge.

* Hon. John E. Conway, U.S. District Court, District of New Mexico, sitting by designation.

STEPHEN H. ANDERSON, Circuit Judge.

Vernon and Bonnie Rambo, plaintiffs below, appeal the dismissal of their action against American Southern Insurance Company, Mid South Claim Services, Inc., and W.T.R. Inc., for lack of personal jurisdiction. We affirm.

### I.

In November 1984, the Rambos insured their 1976 International tractor-trailer truck with defendant American Southern Insurance Company ("American"). American is a Georgia corporation. The Rambos were residents of Alabama at the time the insurance contract was executed. The truck was leased to an Alabama freight company for cross-country hauling. Shortly thereafter, the Rambos moved to Texas. In December 1984, while the Rambos were living in Texas, the truck was stolen in California. The Rambos reported the theft to American. American employed defendant Mid South Claim Services, Inc. ("Mid South") to investigate and settle the claim. Mid South is also a Georgia corporation. After the truck was stolen and the claim filed, the Rambos moved to Oklahoma City, Oklahoma. Subsequently, the truck was recovered, but it was damaged. According to the Rambos, Mid South agreed to deliver the truck to Oklahoma City for repairs. However, Mid South hired defendant W.T.R., Inc. ("WTR"), a Texas corporation, to make the repairs and had the truck taken to Texas for the repair work. During this period, Mid South wrote several letters to the Rambos and also discussed the claim with the Rambos over the telephone. The Rambos were unhappy that the truck was repaired in Texas, and when they picked it up, the repairs were neither satisfactory nor complete.

The Rambos filed this action against American, Mid South and WTR in the federal district court for the Western District of Oklahoma alleging breach of contract and failure to deal in good faith. All three defendants appeared specially, objecting to the court's jurisdiction over them and filing motions to quash and dismiss. Each defendant filed an affidavit asserting that it had no business relationship with the state of Oklahoma: no office, no employees, no property, in short, nothing constituting a presence or contact in the forum state. In response, the Rambos offered the letters written to them in Oklahoma City by Mid South and an affidavit alleging "eight or ten telephone conversations with American Southern and/or Mid South after we moved to Oklahoma." R.Supp. Vol. I.[1] The district court granted the defendants' motions and dismissed the actions. This appeal followed.

### II.

This appeal presents only one issue: could the district court in Oklahoma exercise personal jurisdiction over the nonresident corporate defendants?

"Whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the forum state." *Yarbrough v. Elmer Bunker & Assocs.*, 669 F.2d 614, 616 (10th Cir.1982); *see also* Fed.R.Civ.P. 4(e). "The test for exercising long-arm jurisdiction in Oklahoma is to determine first whether the exercise of jurisdiction is authorized by statute and, if so, whether such exercise of jurisdiction is consistent with the constitutional requirements of due process." *Yarbrough*, 669 F.2d at 616 (quoting *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1385–86 (10th Cir.1980)). In Oklahoma, this two-part inquiry collapses into a single due process analysis, as the current Oklahoma long-arm statute provides that "A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." Okla.Stat. tit. 12,

---

**1.** By affidavit, American denies having made any contacts in Oklahoma regarding the Rambo

§ 2004 F.[2] *See First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.,* 820 F.2d 1127, 1130–31 (10th Cir.1987); *cf. FDIC v. British–American Ins. Co., Ltd.,* 828 F.2d 1439, 1441 (9th Cir.1987) ("Because the California statute extends jurisdiction to the maximum extent permitted by due process, the jurisdictional inquiries under the state statute and due process principles can be conducted as one analysis.") (citation omitted).

We have outlined the general test for personal jurisdiction under the federal Constitution many times.

"A federal court sitting in diversity 'may exercise personal jurisdiction over a non-resident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state.' *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 [100 S.Ct. 559, 564, 62 L.Ed.2d 490] (1980) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945)). 'The defendant's contacts with the forum State must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.' "' *World–Wide Volkswagen, supra,* 444 U.S. at 292 [100 S.Ct. at 564] (quoting *International Shoe,* 326 U.S. at 316 [66 S.Ct. at 158] (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 343, 85 L.Ed. 278] (1940))). The sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activi-

policy. Brief of Appellees, Exhibit "C," at 2.

**2.** Oklahoma also has a long-arm statute specifically related to insurance companies. Okla. Stat. tit. 36, § 1103 A provides:

"Delivery, effectuation, or solicitation of any insurance contract, by mail or otherwise, within Oklahoma by an unauthorized insurer, or the performance within Oklahoma of any other service or transaction connected with such insurance by or on behalf of such insurer, shall be deemed to constitute an appointment by such insurer of the Insurance Commissioner and his successors in office as its attorney, upon whom may be served all law-

ties within the forum State.' *Hanson v. Denckla,* 357 U.S. 235, 253 [78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283] (1958)."

*First City Bank,* 820 F.2d at 1130–31; *see also Jones v. 3M Co.,* 107 F.R.D. 202, 205–06 (D.N.M.1984).

Appellate review of district court decisions on questions of jurisdiction was explained in *Behagen v. Amateur Basketball Ass'n of the United States,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985):

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."

(citations omitted); *see also Ten Mile Indus. Park v. Western Plains Service Corp.,* 810 F.2d 1518, 1524 (10th Cir.1987). We review a district court's ruling on a jurisdictional question de novo. *Ten Mile Indus. Park,* 810 F.2d at 1524. Thus, our task is to determine whether the plaintiffs' allegations, as supported by affidavits, make a prima facie showing of the minimum contacts necessary to establish jurisdiction over each defendant.[3]

ful process issued within Oklahoma in any action or proceeding against such insurer arising out of any such contract or transaction."

Because Okla.Stat. tit. 12, § 2004 F is all-encompassing, extending jurisdiction in Oklahoma to the limits of due process, there is no need for a separate analysis under the insurance statute. Any contacts sufficient to confer jurisdiction under the broader provision would also be sufficient under this provision.

**3.** We reject the Rambos' argument that the contacts of any of the three defendants can somehow be aggregated to support jurisdiction over all. It is clear that "due process requirements

Jurisdiction over corporations may be either general or specific. Jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum state is "specific jurisdiction." In contrast, when the suit does not arise from or relate to the defendant's contacts with the forum and jurisdiction is based on the defendant's presence or accumulated contacts with the forum, the court exercises "general jurisdiction." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528 (1985); *Helicopters Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir. 1987). Here, there are no allegations that any of the three defendants have the continuous or systematic contacts with Oklahoma that would permit the exercise of general jurisdiction. Each of the alleged contacts is related to the insurance policy and the Rambos' claim. We review the contacts between each of the defendants and Oklahoma to determine whether jursidiction may be exercised consistent with due process standards.

█ The district court's decision to dismiss the claim against WTR may be summarily affirmed. WTR had *no* contact with Oklahoma relating to the Rambos' cause of action. According to the complaint and allegations of the plaintiffs, there was no contact with WTR until the Rambos went to Texas to reclaim the truck. The mere fact that WTR was employed by an insurance company to repair the property of Oklahoma residents will not support jurisdiction.

The decision to dismiss American and Mid South requires more scrutiny. Rambo argues that the telephone and written contacts with Mid South can be used to exer-cise jurisdiction over both Mid South and American because Mid South was acting as American's agent to settle the claim. We note initially that the record does not establish the relationship between American and Mid South. However, because American does not deny the allegation, we will assume, without deciding, that the actions of Mid South may be considered in analyzing jurisdiction over American as well.[4]

Certainly, telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction. *See Continental Am. Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1313–14 (10th Cir.1982). In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards. *See Burger King,* 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."); *see also Anselmi v. Denver Post, Inc.,* 552 F.2d 316, 323 (10th Cir.), *cert. denied,* 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977); *Berrett v. Life Ins. Co. of the Southwest,* 623 F.Supp. 946, 950–51 (D.Utah 1985). However, the exercise of jurisdiction depends on the *nature* of those contacts. The existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards. *See Nicholas v. Buchanan,* 806 F.2d 305, 307 (1st Cir. 1986) (plaintiff's "generalized reference to inter-state contacts 'via telephone communications' and 'via U.S. mail,' without more," did not satisfy due process requirements), *cert. denied,* —— U.S. ——, 107 S.Ct. 2466, 95 L.Ed.2d 875 (1987); *Peterson v. Kennedy,* 771 F.2d 1244, 1262 (9th Cir. 1985) ("ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful

---

for personal jurisdiction must be met as to each individual Defendant." *Jones v. 3M Co.,* 107 F.R.D. 202, 204 (D.N.M.1984) (citing *Rush v. Savchuk,* 444 U.S. 320, 334, 100 S.Ct. 571, 558, 62 L.Ed.2d 516 (1980)).

**4.** The United States Supreme Court has noted "that when commercial activities are 'carried on in behalf of' an out-of-state party those activities may sometimes be ascribed to the party, at least where he is a 'primary participan[t]' in the enterprise and has acted purposefully in directing those activities." *Burger King,* 471 U.S. 462 n. 22, 105 S.Ct. 2174 n. 22 (citations omitted). Thus, in this case it may be appropriate to ascribe the activities of Mid South to American, but not to ascribe the activities of Mid South and American to WTR.

activity invoking the benefits and protection of the [forum] state' ") (citation omitted), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 187 (1986); *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.,* 676 F.2d 309, 314 (8th Cir.1982) ("use of interstate facilities (telephone, the mail), ... are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process").

The proper focus for analyzing these contacts is whether they represent an effort by the defendant to "purposefully avail[ ] itself of the privilege of conducting activities within the forum State."[5] *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The Supreme Court has recently reemphasized this element of due process analysis:

"[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State.... In determining when it is that a potential defendant should 'reasonably anticipate' out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denckla,* 357 U.S. 235, 253 [78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283] (1958):

'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'

"This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, [citations omitted] or of the 'unilateral activity of another party or a third person.' Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State."

*Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183–84 (emphasis in original);[6] *see also Asahi Metal Indus. Co. v. Superior Ct. of California,* — U.S. —, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987). We have frequently emphasized the same requirement. *Fidelity and Casualty Co. of New York v. Philadelphia Resins Corp.,* 766 F.2d 440, 445–46 (10th Cir.1985), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986); *Helitzer v. Helitzer,* 761 F.2d 582, 585–86 (10th Cir.1985); *Jones,* 107 F.R.D. at 207; *see also Taylor v. Taylor,* 709 P.2d 707, 709 (Okla.App.1985).

"(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable."

*Data Disc, Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1287 (9th Cir.1977); *see Ins. Co. of North Am. v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir.1981) (jurisdiction over Mexican shipyard held unreasonable).

We need not reach the question of reasonableness here, but note that it would not be unreasonable to require a domestic insurance company that has insured a truck leased for interstate travel to defend itself in an Oklahoma forum. It would certainly be as reasonable, we suppose, as defending itself in Texas.

---

**5.** Moreover, this is generally the distinguishing feature between those cases finding telephone and mail contacts with the forum state sufficient and those that do not.

**6.** Due process analysis does not end with minimum contacts and purposeful availment. "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). In other words, the exercise of jurisdiction by the forum state must be reasonable.

The Ninth Circuit has set forth these requirements in a three-part test for specific jurisdiction:

■ "Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff.... [and generally] requires ... affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir.1986). Here, we find no acts by either Mid South or American that can be construed as purposeful contacts with the state of Oklahoma. The Oklahoma contacts were fortuitous, resulting from the Rambos change of residence *after* the insurance policy was issued and the claim was filed. Thus, this case is distinguishable from the common case where an insurance company has solicited the defendant's business in the forum state, or where the accident leading to the litigation occurred in the forum state. *See, e.g. Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282 (4th Cir.1987); *August v. HBA Life Ins. Co.*, 734 F.2d 168 (4th Cir.1984);[7] *Teleco Oilfield Servs., Inc., v. Skandia Ins. Co.*, 656 F.Supp. 753, 758–59 (D.Conn.1987). Here, the Rambos do not allege that any premiums were mailed from Oklahoma or that any modifications or renewals of the policy were negotiated in the forum state.

In similar circumstances, where the insurance company's contacts with the forum were driven by the plaintiff's choice of residence after the claim arose, the Ninth Circuit failed to find the requisite minimum contacts. In *Hunt v. Erie Ins. Group*, 728 F.2d 1244 (9th Cir.1984), the plaintiff, a resident of Virginia, was severely injured in an automobile accident in Colorado while en route to visit her mother in California. She was hospitalized in Colorado and a dispute arose with the other party's insurance company (Erie) which was licensed to do business in several eastern states but had no offices or contacts in the West. Before the claim was settled, Hunt's mother moved her to California for treatment and rehabilitation. Subsequently, Hunt brought suit in California for breach of contract and various torts. The appellate court found that Erie's contacts with California were insufficient to support the exercise of personal jurisdiction. The parallel with the Rambos' claim here is striking, as the court found that:

> "The mere fact that Erie communicated with Hunt in the state, and may have committed a tort in the exchange of correspondence, does not show that Erie purposefully availed itself of the privilege of conducting business in California. Hunt's move to California forced Erie to send mail to that State concerning her claim."

*Id.* at 1248. We find the Ninth Circuit's reasoning persuasive and agree that minimum contacts are not necessarily established simply because a plaintiff's move into a state requires the defendant to send communications into that forum. *Id.*

Even more illuminating is a comparison with *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In *McGee*, the Supreme Court found due process requirements satisfied where a Texas insurance company's single contact with California was the solicitation of a reinsurance agreement in California and the acceptance of premiums mailed from Califor-

---

7. *August* represents the most expansive reach of the minimum contacts test in an insurance context that we can find. August, the insured, brought a claim against his health insurer in Virginia. The policy was issued when August was an Arizona resident, but he subsequently moved to Virginia. The court noted the following contacts. "The owner of the policy, issued to him in Arizona when an Arizona resident, came to reside in Virginia. The members of his family covered by the policy came with him.... Premiums [were] remitted by mail from Virginia to HBA in Arizona. A loss has allegedly occurred in Virginia, and a claim has been asserted by mail from Virginia. In a letter of denial mailed from Arizona to Virginia, HBA solicited an agreement which would have reduced the coverage afforded by the policy." *August*, 734 F.2d at 172. The Fourth Circuit found the rider, proposed by the insurance company from Arizona, to be the constitutionally sufficient contact. *Id.* at 173. In *August*, the Fourth Circuit may have stretched the minimum contacts test too far. *See Id.* at 173–74, (Hall, J., dissenting). Nevertheless, to find jurisdiction over Mid South and American would require that we stretch it even further, for the Rambos filed their claim with American before they moved to Oklahoma and American neither solicited nor accepted any change in the policy.

nia. "The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died." *Id.* at 223, 78 S.Ct. at 201. In contrast, the Rambos' contract was delivered in Alabama, the claim was filed from Texas and no premiums were mailed from Oklahoma. *McGee* is frequently characterized as the Court's most expansive application of the "minimum contacts" test. *See, e.g., Dollar Savings Bank v. First Security Bank of Utah,* 746 F.2d 208, 212 (3d Cir.1984) ("In *McGee* the Court applied its most relaxed standard of contacts—one which it has steadfastly declined to extend."). Even the Rambos concede that the Court extended minimum contacts "to its farthest limits in *McGee.*" Brief of Appellant at 6. We decline to find due process requirements satisfied on contacts which are even less significant than those in *McGee,* particularly where the missing element is the "purposeful availment" by the defendant recently emphasized by the Court in *Burger King.* If Mrs. McGee had moved to Oklahoma after the claim was filed and denied, we do not believe the Supreme Court would have approved the exercise of jurisdiction by the Oklahoma courts.[8]

 The Rambos also argue that when Mid South agreed to return the truck to Oklahoma for repairs, an oral contract to be performed in Oklahoma was created. We can find no contract in these allegations. Any statement by Mid South in these circumstances was a mere accommodation and did not represent a modification of the insurance contract. The insurance contract provided: "At our [insurance company's] option we may: a. Pay for, repair or replace damaged or stolen property; or b. Return the stolen property, at our ex-

pense." Brief of Appellant at 14. We find no jurisdictional significance in discussions as to where the repairs might be made and the mere assertion that a contract was formed or modified will not support jurisdiction. *See American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.,* 710 F.2d 1449, 1454 (10th Cir. 1983). In addition, even if we were to recognize an oral contract between Mid South and the Rambos to repair the truck in Oklahoma, the absence of "purposeful availment" still remains a jurisdictional barrier, for "an individual's contract with an out-of-state party *alone* can[not] automatically establish sufficient minimum contacts in the other party's home forum." *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185 (emphasis in original).

Finally, the Rambos assert that jurisdiction is proper because Oklahoma is the most convenient place to litigate this case. While the convenience of the forum is relevant to due process analysis, it is not a controlling factor. "[E]ven if the forum State is the most convenient location for the litigation, the Due Process Clause, ... may sometimes act to divest the State of its power to render a valid judgment." *World–Wide Volkswagen,* 444 U.S. at 294, 100 S.Ct. at 566.[9]

The order of the district court is AFFIRMED.

---

**8.** In *McGee,* the Court found that "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connections with that State." *McGee,* 355 U.S. at 223, 78 S.Ct. at 201. The presence of the plaintiff was not the substantial connection, rather it was the insurance company's purposeful acts soliciting business in the forum state. In contrast, there is no substantial connection between the insurance contract at issue here and the state of Oklahoma.

**9.** The Rambos also note that the order of the district court dismissed their action with prejudice and ask us to correct that error. The record discloses that, in response to a motion by the defendants, the district court corrected the order to read "dismissed without prejudice" by order of April 11, 1986. We affirm the district court order as amended and the Rambos are free to pursue their claims in another forum.