UNITED STATES COURT OF APPEALS

**Filed 3/20/96**

TENTH CIRCUIT

---

CUDD PRESSURE CONTROL, INC.,　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　Plaintiff-Counter-Defendant-Appellee,　)
　　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　　)　　　　　No. 95-6263
　　　　　　　　　　　　　　　　　　　　)　　　(D.C. No. CIV-94-1127-R)
STANLEY P. CORNELIUS, doing business as )　　　　　(W.D. Okla.)
Stanley P. Cornelius, doing business as Stan )
Cornelius Company, Inc., individually; LALA )
ARNOLDOINA CORNELIUS, doing business )
as Stanley P. Cornelius, doing business as Stan )
Cornelius Company, Inc., individually;　　)
STANLEY P. CORNELIUS ENTERPRISES )
CONSORTIUM USA,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　Defendants-Appellants,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　and　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
STAN CORNELIUS COMPANY, INC.,　　　)
　　　　　　　　　　　　　　　　　　　　)
　　Defendant-Counter-Claimant-Appellant. )

---

ORDER and JUDGMENT[*]

---

Before ANDERSON, TACHA, and BALDOCK, Circuit Judges.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendants Stanley P. Cornelius, Lala Arnoldoina Cornelius, Stanley P. Cornelius Enterprises Consortium USA, and Stan Cornelius Company, Inc., appeal the district court's order denying their motion to dismiss the complaint of Plaintiff Cudd Pressure Control, Inc. ("CPC") for lack of personal jurisdiction. We exercise jurisdiction under 28 U.S.C. § 1292(b) and affirm.

I.

The record before us reveals the following facts. Plaintiff CPC, a corporation organized under the laws of Delaware, is engaged in the business of controlling and restoring production to oil and gas wells. CPC's headquarters and principal place of business is in Woodward, Oklahoma. Bobby Joe Cudd, President of CPC, directs CPC's seventeen offices from CPC headquarters in Woodward, Oklahoma.

Defendant Stan Cornelius Company, Inc., ("SCI"), is a Nevada corporation engaged in the business of oil and gas production in Uzbekistan--a republic of the former Soviet Union located in South-Central Asia--along with a related entity, Stan Cornelius Enterprise Consortium, USA. Stanley P. Cornelius is the President of SCI.

In early April 1992, Gary Tumlinson, an associate of Mr. Cornelius, telephoned Mr. Cudd in Woodward, Oklahoma. Mr. Tumlinson told Mr. Cudd that an oil well that SCI was operating in Uzbekistan had "blown out" and was on fire. Mr. Tumlinson inquired about hiring CPC to control the well. Shortly thereafter, Mr. Cornelius, President of SCI, telephoned Mr. Cudd in Woodward, Oklahoma from Uzbekistan and

2

asked if CPC would travel to Uzbekistan to control the oil well blowout and fire. Over the next few days, Mr. Cornelius and SCI contacted Mr. Cudd and CPC in Woodward, Oklahoma numerous times by telephone and facsimile, and negotiated terms under which CPC would provide its well control services for SCI in Uzbekistan. After many telephone and facsimile contacts between Oklahoma and Uzbekistan, Mr. Cudd and Mr. Cornelius formed an oral agreement wherein SCI agreed to pay CPC to deliver equipment and personnel to Uzbekistan from Oklahoma to control the blowout and fire.

Mr. Cudd made arrangements in Oklahoma to fulfill CPC's obligations under the oral agreement. Mr. Cudd obtained the assistance of the Oklahoma Governor and United States Senator Boren to arrange U.S. Air Force transport from Houston to Uzbekistan for CPC personnel and equipment. During this period, Lala Arnoldoina Cornelius, wife of Mr. Cornelius and a corporate officer of SCI, contacted Mr. Cudd and other CPC personnel in Oklahoma by telephone and facsimile numerous times.

CPC equipment reached Uzbekistan from Oklahoma and Houston on April 11, 1992. CPC personnel arrived in Uzbekistan on April 13, 1992. In Uzbekistan, Mr. Cornelius signed an Equipment and Service Order in which he acknowledged that CPC personnel and equipment traveled to Uzbekistan from Oklahoma at SCI's request.

On May 5, 1992, the oil well "bridged over" and stopped flowing on its own. CPC did not cause the flow to cease. Most CPC personnel returned to Oklahoma, and the equipment remained in Uzbekistan. Mr. Cudd and Mr. Cornelius executed a written

3

"General Agreement" before Mr. Cudd left Uzbekistan and returned to Oklahoma. The General Agreement provided that CPC had sent equipment and a crew to Uzbekistan "pursuant to an oral agreement" and that CPC "had satisfied all its obligations under the oral agreement." SCI promised to pay CPC $3,385,738.27 for services rendered. The General Agreement further provided that it was "governed by and construed under the laws of the State of Oklahoma, USA."

After CPC returned to Oklahoma, SCI telephoned and faxed letters to CPC in Oklahoma many times, and assured CPC that SCI would pay CPC the $3,385,738.27 due under the General Agreement. Further, Mr. Cornelius traveled to Oklahoma at least three times and met with Mr. Cudd and CPC personnel to discuss potential business ventures. Ultimately, SCI paid CPC only $1,500,000.00 of the $3,385,738.27 due under the General Agreement.

## II.

CPC filed the instant diversity action against SCI in the Western District of Oklahoma and asserted breach of contract, unjust enrichment, and conversion claims against SCI. SCI moved to dismiss CPC's complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). The district court conducted an evidentiary hearing on the motion to dismiss, and made specific findings of fact. Based on the facts summarized above, the district court concluded that SCI, through Mr. Cornelius, purposefully established minimum contacts with Oklahoma by initiating contact with

4

CPC, placing numerous telephone calls and sending faxes to CPC, and inducing CPC to leave Oklahoma on the representation that it would be paid for doing so. Further, the district court determined that the oral agreement between CPC and SCI, memorialized in the General Agreement, constituted a substantial connection between SCI and Oklahoma, insofar as it created a continuing obligation between SCI and CPC, a corporation with its principal place of business in Oklahoma. Finally, the court noted that CPC's injuries arose out of SCI's purposeful contacts with Oklahoma, and that the Oklahoma choice of law provision in the General Agreement should cause SCI to anticipate the possibility of being haled into court in Oklahoma. Consequently, the district court denied SCI's Rule 12(b)(2) motion to dismiss CPC's complaint. The district court amended its order pursuant to 28 U.S.C. § 1292(b), and SCI appealed.

SCI argues the district court erred in denying its Rule 12(b)(2) motion to dismiss CPC's complaint for lack of personal jurisdiction. SCI contends that the district court's exercise of personal jurisdiction contravenes the Due Process Clause of the Fourteenth Amendment because SCI had insufficient minimum contacts with Oklahoma to support personal jurisdiction.

## III.

We review the district court's determination on a motion to dismiss for lack of personal jurisdiction de novo, and review findings of fact made after an evidentiary hearing for clear error. Federal Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170,

5

173 (10th Cir. 1992). The plaintiff has the burden of establishing jurisdiction when the defendant contests the court's jurisdictional authority. E.g., Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

The law of the forum state determines the jurisdiction of a district court sitting in diversity over a nonresident defendant. Fed. R. Civ. P. 4(e); Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988). A plaintiff must satisfy the requirements of the forum state's long-arm statute as well as the federal constitution to establish personal jurisdiction. Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1357 (10th Cir. 1990). Oklahoma's long-arm statute provides:

> A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.

Okla. Stat. tit. 12, § 2004(F). Thus, Oklahoma's long-arm statute jurisdiction is coextensive with the constitutional limitations imposed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Kennedy v. Freeman, 919 F.2d 126, 128 (10th Cir. 1990). If jurisdiction is consistent with the Due Process Clause, Oklahoma's long-arm statute authorizes jurisdiction over a nonresident defendant. Id.

The general constitutional test for personal jurisdiction is well-established. A federal court sitting in diversity "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The

defendant's contacts with the forum state must also be such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316. A defendant's contacts are sufficient if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Jurisdiction may not be avoided merely because a defendant was not physically present in the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). Rather, telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction. Rambo, 839 F.2d at 1418.

IV.

We conclude the district court properly determined it had personal jurisdiction over SCI. Stan and Lala Cornelius purposefully directed SCI's actions toward CPC by initiating numerous telephone and facsimile contacts with CPC in Woodward, Oklahoma. After SCI contacted CPC many times in Oklahoma, Mr. Cornelius and Mr. Cudd reached an oral agreement for CPC to provide well control services for SCI in Uzbekistan. The oral agreement caused substantial activity in the forum state, as CPC prepared to perform the well control services and enlisted the assistance of Oklahoma elected officials. In response to SCI's contacts with CPC in Oklahoma, Mr. Cudd, other CPC personnel, and substantial equipment traveled to Uzbekistan. In Uzbekistan, Mr. Cornelius acknowledged in writing that CPC personnel and equipment traveled to Uzbekistan at the request of SCI. CPC and SCI executed the General Agreement in Uzbekistan,

7

memorializing the oral agreement. The General Agreement provided that Oklahoma law governed the contract between the parties.

Based on the numerous contacts SCI initiated with CPC in Oklahoma, the substantial effects SCI's actions caused in Oklahoma, and the Oklahoma choice of law provision, SCI should have anticipated that it could be haled into court in Oklahoma for breach of the General Agreement. In sum, SCI's extensive contacts with CPC in Oklahoma are sufficient for it to have had fair warning that it could be sued there. See World-Wide Volkswagen, 444 U.S. at 297. Consequently, it does not offend traditional notions of fair play and substantial justice to uphold the district court's exercise of personal jurisdiction over SCI. We therefore AFFIRM the district court's denial of SCI's motion to dismiss CPC's complaint for lack of personal jurisdiction.

AFFIRMED.

ENTERED FOR THE COURT

BOBBY R. BALDOCK,
Circuit Judge