**SHEEHAN PIPE LINE CONSTRUCTION COMPANY, Plaintiff,**

**v.**

**LANEY DIRECTIONAL DRILLING COMPANY, Defendant.**

**No. 02–CV–381–B(J).**

United States District Court, N.D. Oklahoma.

Oct. 23, 2002.

---

Leonard I. Pataki, Young H. Pei, Doerner, Saunders, Daniel & Anderson, Tulsa, OK, for Sheehan Pipe Line Construction Company, An Oklahoma Partnership.

James Rouse Hicks, Mark A. Craige, Morrel, West, Saffa, Craige & Hicks, Inc., Tulsa, OK, for Laney Directional Drilling Co., a Corporation.

### *ORDER* [1]

JOYNER, United States Magistrate Judge.

Now before the Court is Laney Directional Drilling Company's ("Laney") Motion to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(2), for lack of personal jurisdiction. Doc. No. 4. In the alternative, Defendant Laney asserts that a contract was formed by the parties' conduct and that an arbitration clause requires all disputes to be resolved in Houston, Texas. Doc. No. 4. After considering the argu-

ments of the parties and the relevant case law, the Court finds that Defendant's Motion to Dismiss for lack of personal jurisdiction is **DENIED.** Defendant's alternative assertion that this action must be dismissed in favor of arbitration is similarly **DENIED.**

## I. INTRODUCTION

### A. BACKGROUND

Plaintiff, Sheehan Pipe Line Construction Company ("Sheehan"), is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma. Defendant Laney is a Texas corporation with its principal place of business in Houston, Texas. Defendant was engaged in the business of cross-country gas pipeline construction on May 14, 2002. Plaintiff sued Defendant for non-payment of services rendered. Doc. No. 1. Defendant filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, and, in the alternative, argued that a contract was formed by the conduct of the parties requiring resolution of all disputes through arbitration in Houston, Texas. Doc. No. 4.

### B. DEFENDANT'S CONTACTS WITH OKLAHOMA

Plaintiff and Defendant do not dispute the underlying facts regarding Defendant's contacts with Oklahoma. Rather, the parties have different interpretations as to whether these facts evidence minimum contacts by Defendant with the State of Oklahoma. Defendant Laney had the following contacts with Oklahoma:

Defendant contacted Plaintiff's Tulsa, Oklahoma office by telephone in the spring of 2001, to solicit bids from Plaintiff as a subcontractor for Horizontal Directional

---

**1.** This Order is entered pursuant to the consent of the parties to the United States Magis-

trate Judge. *See* 28 U.S.C. § 636.

Drilling on the Gulf Stream Project. [Pl. Br. at 2; Ex. A, Robert Bendure Affidavit]. Several subsequent telephone conversations occurred between Plaintiff's and Defendant's employees in Oklahoma and Texas during the course of negotiations on the Gulf Stream Project. [Pl. Br. at 2; Ex. A, Robert Bendure Affidavit].

On January 16, 2001, J. Kevin Neal, Manager of Estimating/Engineering at Laney, sent a letter to Plaintiff in Oklahoma, which contained bid forms and solicited a subcontractor bid from Plaintiff. [Pl. Br. Ex. B]. Plaintiff submitted its bid proposal detailing the work· to be performed and price terms on April 23, 2001, with addendums on April 30, 2001 and May 16, 2001. [Pl. Br. Ex. C].

Defendant instructed Plaintiff to commence work on the Gulf Stream Project on July 30, 2001. Plaintiff began work on August 1, 2001. [Pl. Br. Ex. A, Robert Bendure Affidavit]. Two weeks later, on August 14, 2001, Defendant submitted a proposed subcontract agreement to Plaintiff for Plaintiff's review. [Def. Br. Appendix to Motion to Dismiss]. Plaintiff objected to certain material terms in a letter to Defendant dated November 8, 2001. [Pl. Br. Ex. D]. Plaintiff periodically invoiced Defendant for work performed on the Gulf Stream Project as the work progressed. [Pl. Complaint Exs. A–D, May 14, 2002].

On November 19, 2001, Defendant mailed a letter to Plaintiff rejecting Plaintiff's changes to the proposed subcontract agreement and stated its belief that a contract for Plaintiff's services had previously been formed. [Pl. Br. Ex. F].

Defendant argues that these contacts are insufficient under the due process clause of the United States Constitution to subject Defendant to this Court's jurisdiction.

## II. PERSONAL JURISDICTION

### A. STANDARDS FOR EVALUATING PERSONAL JURISDICTION

The United States Supreme Court has held that individuals have a liberty interest, protected by the due process clause, in not being subject to the binding judgments of a forum with which the individual has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In a diversity case, not only must the due process clause be satisfied, but the law of the forum state must also authorize the exercise of jurisdiction under the circumstances. Thus, the test in a diversity case for exercising long-arm jurisdiction over a nonresident of the forum is to determine first whether the exercise of jurisdiction is authorized by a forum statute and, if so, whether such exercise of jurisdiction would be consistent with the constitutional requirements of due process. In Oklahoma, however, this two-part inquiry collapses into a single due process analysis because the current Oklahoma long-arm statute provides that an Oklahoma court "may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." *See* 12 Okla. Stat. § 2004(F); *see also Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1416–17 (10th Cir.1988) (establishing the personal jurisdiction inquiry under Oklahoma law).

A federal court may, consistent with the due process clause of the Constitution, exercise personal jurisdiction over a nonresident defendant so long as minimum contacts exist between the defendant and the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The

defendant's contacts with the forum state must be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.* at 292, 100 S.Ct. 559. The sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has purposefully availed itself of the privilege of conducting activities within the forum state. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *See generally, Rambo,* 839 F.2d at 1417 (reiterating this general test for personal jurisdiction).

The "minimum contacts" test protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar. Moreover, "it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Woodson,* 444 U.S. at 291, 100 S.Ct. 559.

 Jurisdiction over corporations may be either general or specific. If a defendant has purposefully directed its activities at residents of the forum, and the injuries alleged arise out of or relate to those activities, a court may, consistent with the due process clause, exercise "specific" jurisdiction over the defendant. In contrast, when the suit does not arise from or relate to the defendant's contacts with the forum, a court may exercise "general" jurisdiction over the defendant based on the defendant's presence in or accumulated contacts with the forum. *Rudzewicz,* 471 U.S. at 473 n. 15, 105 S.Ct. 2174; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). However, because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts." *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868. *See generally OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1090–91 (10th Cir.1998); *Rambo,* 839 F.2d at 1418. Thus, to establish general jurisdiction, the defendant must be conducting substantial and continuous local activity within the forum state. *Soma Medical Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir.1999).

### B. ANALYSIS

#### 1. General Personal Jurisdiction

 For a court to assert general jurisdiction over a nonresident defendant, the plaintiff must demonstrate the defendant has continuous and systematic contacts with the forum state. In *Soma,* the Tenth Circuit found the following factors helpful in determining whether general personal jurisdiction exists as to a non-resident corporation:

Whether the corporate defendant is:

1. engaged in business in this state;
2. licensed to do business in this state;
3. owning, leasing, or controlling property (real or personal) or assets in this state;
4. maintaining employees, offices, agents, or bank accounts in this state;
5. present in that shareholders reside in this state;
6. maintaining phone or fax listings within this state;
7. advertising or soliciting business in this state;
8. traveling to this state by way of salespersons, etc.;
9. paying taxes in this state;

10. visiting potential customers in this state;

11. recruiting employees in the state;

12. generating a substantial percentage of its national sales through revenue generated from in-state customers.

*Soma*, 196 F.3d at 1295–96.

None of the above criteria are satisfied to enable the Court's exercise of general personal jurisdiction over Defendant. The only factor from the above list of factors that Defendant's contacts might satisfy is number seven—advertising or soliciting business in the state. However, because Defendant solicited only one resident, Sheehan, its conduct does not justify subjecting Defendant to general personal jurisdiction. Defendant's activities do not demonstrate continuous and systematic contacts with Oklahoma.

## 2. Specific Personal Jurisdiction

■ Although general personal jurisdiction over Defendant is not applicable, the Court may still exercise specific personal jurisdiction consistent with the due process clause if Defendant has purposefully directed its activities at residents of the forum, and the injuries alleged arise out of or relate to those activities. To exercise specific personal jurisdiction, a defendant's activities directed toward residents in a forum state must be such that the defendant can reasonably anticipate being haled into court in the forum state. The Supreme Court, in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), reasoned:

> The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.* at 253, 78 S.Ct. 1228 (citing *Int'l Shoe Co.*, 326 U.S. at 319, 66 S.Ct. 154).

■ Jurisdiction will not be avoided merely because the defendant never physically entered the forum state. *Burger King Corp.*, 471 U.S. at 476, 105 S.Ct. 2174. The need for physical presence is obviated by the "inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines . . . ." *Id.* at 476, 105 S.Ct. 2174. Also relevant is whether any nexus exists between Defendant's alleged forum-related contacts and the cause of action against Defendant. *See OMI Holdings*, 149 F.3d at 1095 (recognizing that for specific jurisdiction to exist, there must be a nexus "between Defendant's forum-related contacts and the Plaintiff's cause of action").

■ The Court finds that Defendant Laney is subject to specific personal jurisdiction in the forum state of Oklahoma. By telephoning Plaintiff, an Oklahoma corporation, to *solicit* bids for the Gulf Stream Project, Defendant's conduct evidences purposeful direction of activities toward an Oklahoma resident. Subsequent telephone conversations between employees of the parties in Oklahoma and Texas occurred. Moreover, Defendant additionally mailed Plaintiff a letter containing bid forms on January 16, 2001, and a proposed subcontractor agreement on August 14, 2001. [Pl. Br. Ex. B; Def. Br. Appendix to Motion to Dismiss]. Thus, while the Defendant was never physically present in Oklahoma, a nexus exists between Defendant's forum-related contacts and Plaintiff's cause of action for non-payment for services rendered. Most significantly, Defendant solicited Plaintiff's business by contacting Plaintiff for a subcontractor bid. Defendant has sufficient minimum contacts with Oklahoma to subject it to specific personal jurisdiction in this Court.

Once the Court finds that Defendant purposefully established minimum contacts, it must consider the contacts in light of various factors to determine if the exercise of specific personal jurisdiction comports with traditional notions of fair play and substantial justice.

### 3. Traditional Notions of Fair Play and Substantial Justice

The Court finds that exercising specific personal jurisdiction against Defendant Laney in this forum is reasonable and does not offend traditional notions of fair play and substantial justice. To determine whether an exercise of personal jurisdiction would be so unreasonable as to violate "fair play and substantial justice," courts should consider: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the states involved in furthering fundamental social policies. *OMI Holdings,* 149 F.3d at 1095. As discussed below, the Court finds that these factors support the exercise of specific personal jurisdiction in this forum.

#### (a) *Burden on Defendant Laney*

It is only in highly unusual cases that inconvenience will rise to a level of constitutional concern. In this age of instant communication and modern transportation, the burdens of litigating in a distant forum have significantly lessened. *Peay v. Bell-South Medical Assistance Plan,* 205 F.3d 1206, 1212–13 (10th Cir.2000) (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 947–48 (11th Cir.1997)). Defendant, a Texas corporation, has not demonstrated it will face a significant burden if required to defend this case in this forum.

#### (b) *Oklahoma's Interest*

Oklahoma has an important interest in providing a forum in which its citizens can seek redress for injuries caused by out-of-state actors. Oklahoma also has a strong interest in protecting its citizens from those who purposefully direct their activities at residents of this state by soliciting subcontractor bids, as occurred here.

#### (c) *Plaintiff's Sheehan's Interest*

Plaintiff is an Oklahoma corporation; Defendant solicited Plaintiff's subcontractor bid for the Gulf Stream Project by telephoning and mailing letters to Plaintiff's Tulsa, Oklahoma office; and Plaintiff is suing for non-payment for services rendered. Plaintiff has a strong interest in litigating this case in Oklahoma.

#### (d) *Judicial System's Interest*

The judicial system has an interest in ensuring the economic and efficient administration and resolution of controversies in the court system and preventing duplicative lawsuits. At this stage of the litigation, the present action is the only case pending, and these interests are not adversely affected by the continuation of this lawsuit in this forum.

#### (e) *Other States' Interests*

Defendant Laney has failed to demonstrate that any specific policy of another state would be subverted by the exercise of personal jurisdiction over Laney in this case. Defendant argues that a contract was formed naming Florida law as governing law and Houston, Texas as the forum for arbitration of disputes. However, Defendant does not set forth any significant policy afforded to it by either Florida or Texas which would be undermined by this Court's exercise of jurisdiction.

For the reasons set forth above, Defendant's Motion to Dismiss for lack of personal jurisdiction is **DENIED.**

## III. CONTRACT FORMATION AND ARBITRATION CLAUSE

As an alternative theory, Defendant asserts that a contract was formed by the parties' conduct, which requires all disputes to be resolved by arbitration in Houston, Texas. However, the parties dispute whether a contract was actually formed and the terms of the contract. The "contract" involved an agreement for Plaintiff's services on the Gulf Stream Project.

### A. DID THE PARTIES' CONDUCT FORM A CONTRACT?

Defendant asserts the Court lacks jurisdiction over this matter because a contract was formed mandating resolution of all disputes by arbitration in Houston, Texas. Defendant submitted a proposed subcontract agreement to Plaintiff for Plaintiff's review on August 14, 2001. [Def. Br. Appendix to Motion to Dismiss]. Plaintiff subsequently objected to certain material terms of the contract, and no contract was executed. [Def. Br. at 2]. Defendant contends that despite Plaintiff's objections and interlineations to the terms of the proposed subcontract, and the fact that neither party executed the contract, a contract was formed based on the parties' conduct because Defendant "issued a request for Sheehan to commence working . . . ." [Def. Br. at 10]. However, as Plaintiff points out, Defendant's argument relies on a sequence of events that is not supported by the facts.

The record shows the sequence of events is as follows: (1) On January 16, 2001, Defendant sent a letter to Plaintiff containing bid forms and soliciting a subcontract bid from Plaintiff. [Pl. Br. Ex. B]; (2) Plaintiff submitted its bid proposal outlining the work to be performed and the price terms on April 23, 2001 (with addendums on April 30, 2001 and May 16, 2001). [Pl. Br. Ex. C]; (3) On July 30, 2001, Defendant directed Plaintiff to commence work on the Gulf Stream Project. [Pl. Br. Ex. A, Robert Bendure Affidavit]; (4) Plaintiff began working on the Gulf Stream Project August 1, 2001. [Pl. Br. Ex. A, Bendure Affidavit]; (5) On August 14, 2001, Defendant submitted its proposed subcontract agreement to Plaintiff for Plaintiff's review. [Def. Appendix to Motion to Dismiss]; (6) On November 8, 2001, Plaintiff mailed Defendant a copy of the proposed contract with certain comments and changes. Plaintiff's letter requested Defendant indicate acceptance by initialing the revised terms and returning it to Plaintiff. Plaintiff stated that if Defendant did "not agree with these comments then further negotiation will be necessary." [Pl. Br. Ex. D]; (7) Defendant responded on November 19, 2001, rejecting Plaintiff's changes and stating its belief that a contract for Plaintiff's services had been "established months ago." [Pl. Br. Ex. E]; and (8) On November 28, 2001, Plaintiff replied by letter to Defendant stating its belief that if a contract had been formed at all, it was based upon Plaintiff's initial bid proposal and Defendant's subsequent instruction to commence work on the project. [Pl. Br. Ex. F].

After reviewing the parties' briefs and exhibits, the Court concludes Defendant's argument is not supported by the actual sequence of events. In his affidavit, Robert Bendure notes the proposed subcontract agreement was not submitted to Plaintiff until *after* Plaintiff had been instructed by Defendant to commence work on the Gulf Stream Project. Therefore, Plaintiff's conduct of working after the submission of the proposed subcontract agreement does not constitute conduct implying a contract was formed on those

terms. Moreover, Defendant does not dispute Plaintiff's contention that Defendant instructed Plaintiff to begin working on July 30, 2001, approximately two weeks before submitting the proposed subcontract agreement.

 It is clear and undisputed that neither party executed the August 14, 2001 proposed subcontract agreement (i.e., Plaintiff marked its changes to certain material terms and Defendant did not accept these counterproposals). Thus, because the proposed subcontract agreement was not executed and Defendant had directed Plaintiff to commence work prior to this date, no contract was formed based on any of the terms of the proposed subcontract agreement, including the arbitration provision. Under basic contract principles, if a contract was formed under this set of circumstances, it is based upon Plaintiff's initial subcontractor bid to Defendant and Defendant's subsequent instruction that Plaintiff commence work on the project. Defendant's characterization of the sequence of events to support its argument that a contract was formed by the conduct of the parties is without merit. Moreover, the case to which Defendant cites to support this contention is not analogous to these facts.[2]

Therefore, Defendant's alternative argument that this Court must dismiss this action because a contract was formed based upon the conduct of the parties and mandates resolution of all disputes through arbitration in Houston, Texas is **DENIED**. Jurisdiction in this Court remains proper.

## B. ARBITRATION CLAUSE

For the reasons discussed above, the Court finds no contract was formed mandating dispute resolution by arbitration in Houston, Texas. Defendant's further arguments on the applicability of the arbitration provision need not be addressed. Thus, Defendant's argument is **DENIED** and jurisdiction in this Court remains proper.

## *CONCLUSION*

Defendant's Motion to Dismiss for lack of personal jurisdiction is **DENIED**. Doc. No. 4. Defendant's alternative assertion that this action must be dismissed in favor of arbitration is similarly **DENIED**.

IT IS SO ORDERED.

---

**2.** Defendant cites favorably *Lee v. Nat'l Refining Co.,* 181 Okla. 556, 75 P.2d 406 (1938), in its proposition that a contract was formed by the conduct of the parties. *Lee* involved acceptance of delivered goods after a party's failure to object to certain terms set forth in a letter. The facts in *Lee* are distinguishable from the facts at hand because Plaintiff's *conduct of continuing work on the Gulf Stream Project (based upon its initial subcon-* tract bid and Defendant's instruction to begin work) does not constitute an implied acceptance by conduct of Defendant's proposed subcontract agreement. In fact, Plaintiff had previously expressly rejected certain material terms contained in the proposed subcontract agreement. Plaintiff's conduct was simply a continuation of the course of work that had begun August 1, 2001.